Drake, Ch. J.,
delivered tbe opinion of tbe court:
This case, considered merely as a claim for tbe proceeds of cotton captured by tbe military forces of tbe United States during tbe rebellion, bas no point of controversy. Tbe claimant’s ownership, tbe capture and sale of tbe cotton, and tbe payment of tbe proceeds thereof into tbe Treasury, are all established. The only question raised in tbe case is as to tbe right of tbe claimants, a corporation created by an act passed by the legislature of tbe State of Georgia, while that State was in armed rebellion against the Government of tbe United States, to sue in this court for tbe recovery of said proceeds. Tbe counsel for tbe Government urge that the claimant bas no legal existence entitling it to sue in this court; that the act creating it was the act of a legislature which bad no lawful authority to pass any such act ; that no legislation whatever of tbe late rebel States. is entitled as a matter of right to recognition in the Union; and that,'therefore, the claimant’s petition should be dismissed.
*450 The question thus presented has not, we believe, been before raised. If we were required to pass upon it without any guidance from the appellate court, we should approach its consideration with more hesitation than we now feel. But we consider the question practically decided, by the Supreme Court in Texas v. White, 7 Wallace, 700,) where, as we conceive, the following propositions were enunciated
1. That no rebel State ceased, by its act of secession and rebellion, to be a State of the Union.
2. That the citizens of any such State did not, by such secession and rebellion, cease to be citizens of the Union.
3. That the legislature of any such State cannot be regarded in the courts of the United States as a lawful legislature, or its ¡acts as lawful acts.
4. That, nevertheless, the rebel government in any such ¡State was its only actual government, which, having displaced the regular and lawful authority, and established itself in the customary seats of power and in the exercise of the ordinary functions of administration, constituted a defacto government, whose acts, during its existence as such, would be effectual, and, in many respects, valid.
5. That the acts of such a de facto though unlawful government, which must be regarded as valid, are those that are necessary to peace and good order among citizens; such, for example, as acts sanctioning and protecting marriage and the domestic relations, governing the course of descents, regulating the conveyance and transfer of property, real and personal, and providing remedies for injuries to person and estate, and other similar acts.
6. That the acts of such a government which must be regarded as invalid and void are those that were in furtherance or support of rebellion against the United States, or intended to defeat the just rights of citizens, and other acts of a like nature.
From all of which propositions we deduce this general proposition as the final doctrine of that court on this subject, namely: that whatever act of the legislature of a rebel State did not tend to further or support the rebellion, or to defeat the just rights of citizens, but related merely to the domestic affairs of the people of the State as a community, aside from the connection of that people with the rebellion, is a valid act by *451 a de facto though unlawful government, which will be sustained in the courts of the United States.
This seems to us to draw the only line of distinction which can well be drawn, and to bo the only alternative to the entire refusal of recognition to such acts. It is clearly impossible for the judiciary to pass upon the expediency of every act of a merely municipal character passed by a rebel legislature, or to decide whether every such act was necessary to peace and good order among citizens; but there is no difficulty in applying to every such act these two simple tests: 1. Was it intended to further or support the rebellion, or to defeat the just rights of citizens? and 2. Was it intended merely to regulate the domestic affairs of the people of the State, aside from their connection with the rebellion 1 If the first question can be answered negatively, and the second affirmatively, then it seems to us that the ruling of the Supreme Court requires us to give effect to the act. Any other view of the matter would, in our judgment, involve the domestic affairs of the people of the rebel States in a confusion and entanglement from which extrication would be almost impossible.
Applying to the charter of the Home Insurance Company the tests indicated, we do not find that its enactment was intended to further or support the rebellion, or to defeat the just rights of citizens; but, on the other hand, that it was intended as a means, so far as it went, of regulating the domestic affairs of the State; in which work, in every civilized state, the creation of corporations bears no inconsiderable part.
We therefore hold that company to have a valid existence, entitling it to sue in this court; and award judgment in its favor for the proceeds of its cotton found to have been captured.